The STATE of Ohio, Appellee,

v.

McMILLAN, Appellant.

[Cite as *State v. McMillan* (1989), 62 Ohio App.3d 565.]

Court of Appeals of Ohio,
Lorain County.

No. 88CA004392.

Decided April 19, 1989.

566

*Gregory A. White,* prosecuting attorney, for appellee.

*Mark A. Aufdenkampe,* for appellant.

*Per Curiam.*

Arnold Hendricks McMillan, defendant-appellant, appeals his jury conviction for gross sexual imposition, R.C. 2907.05(A)(3) (subsequently renumbered as [A][4]), a third degree felony, and a specification of a prior offense of violence. The victim was an eight-year-old girl, K.C. We affirm.

Defendant admitted that he had masturbated in front of the victim but denied there was any touching. The victim testified there was a touching.

Prior to the commencement of trial, the trial judge held an in-chambers hearing to determine K.C.'s competency to testify. Over the defendant's objection, the in-chambers hearing included only the trial judge, the court reporter, and the child-witness, K.C. At the conclusion of the competency hearing, the trial judge found K.C. competent to testify, stating:

"[T]he Court finds [K.C.] is competent to testify. The Court held an in-camera examination in the Court's Office with the Court Reporter, myself and [K.C.] present. No other people were permitted in the small chambers, neither the Prosecutor, the Defendant, nor the Defendant's counsel, as the Court feels that the competency of this young lady is strictly a Court's determination; and the possible intimidation of the Defendant in this small office would, perhaps, interfere with free testimony of the young· lady."

Following this hearing, the criminal proceeding resumed in the courtroom and the trial judge announced that he had found K.C. competent to testify. Defendant requested that the competency hearing continue in the presence of the defendant and defense counsel so that they could participate. The court overruled the request, saying:

"The court feels you have absolutely no right to participate. You have no right to ask questions. It's strictly the Court that determines the competency.

"You have the right to ask her questions on cross-examination when she testifies, but neither the Prosecutor or you have the right to ask questions. My policy is not to allow anyone except myself and, of course, the Court Reporter in the room. I don't want the Defendant or anyone else staring at the child or making any noises or gestures.

"We did that once; and it didn't work out well; and I have prohibited it in the future. It's solely a question that the Court must determine competency. It's not up to the attorneys."

Defense counsel was told there was a record of the hearing, but counsel did not ask for a copy of the transcript, nor did he ask the reporter to read it back to him.

When K.C. was called by the state to testify, defense counsel objected to her testifying because of the trial judge's denial of participation by defense counsel and the defendant at the competency hearing. This objection was overruled, and K.C. testified. Defense counsel aggressively cross-examined K.C., challenging her credibility.

At no time, however, either before the trial judge or in this court, has defendant ever claimed that K.C. was not competent to testify. Neither is there anything in the record that suggests K.C. was not a competent witness.

### Assignment of Error I

"The trial court erred in excluding the defendant and defendant's counsel from the competency hearing conducted by the court in chambers, thereby violating the defendant's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and Art. I, Section 10 of the Constitution of the State of Ohio."

■ We state at the outset that we do not condone the exclusion of both the defendant and defendant's attorney from the preliminary hearing to determine the child's competency. Even if, as here, no prejudice to the defendant results, the appearance of the judge and a witness closeting themselves without a representative of the defendant is one which raises the specter of impropriety. It should be avoided.

■ As to defendant's specific claim that his confrontation rights under the Sixth Amendment to the United States Constitution were violated, the Supreme Court has answered to the contrary in *Kentucky v. Stincer* (1987), 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631. In *Stincer,* the trial judge excluded the defendant, but not defendant's counsel, from a child-witness' competency hearing. The Supreme Court held that the Confrontation Clause guarantees only an opportunity for cross-examination where substantive trial evidence is given. As long as the defendant is given full cross-examination at the time of trial, the Confrontation Clause is not implicated. In *Stincer,* as here, after the trial court determined that the child-witness was competent to testify, the witness was subject to full and complete cross-examination, and was so examined. The Supreme Court noted that the preliminary determination of competency is an ongoing one for the judge to make based on the witness' actual testimony at trial.

The assignment of error is overruled.

### Assignment of Error II

"The trial court erred in excluding the defendant and defendant's counsel from the competency hearing conducted by the trial court in chambers,

thereby violating the defendant's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States."

■ *Stincer* observed that even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. However, the privilege of this presence is not guaranteed when the presence would be useless, or the benefits but a shadow. *Stincer*, 482 U.S. at 745, 107 S.Ct. at 2667, 96 L.Ed.2d at 647.

■ In Ohio, it is the duty of the trial judge to " * * * examine the child, without participation or interference of counsel, to determine the child's competency to testify." *State v. Wilson* (1952), 156 Ohio St. 525, 529, 46 O.O. 437, 439, 103 N.E.2d 552, 555.

The only benefit of being present at the determination of competency of a child-witness would be the opportunity to advocate that the child was incompetent to testify. This, in some circumstances, might be a considerable benefit. In the case before us, however, the defendant did not at trial, nor does he now, contend that the witness was not competent. Neither does the record before us suggest incompetency.

Assignment of error two is overruled.

### Assignment of Error III

"The trial court erred in permitting Mildred Carter of the Center for Children and Youth Services of Lorain County to testify as an expert witness with regard to the credibility of a sexually abused child's story over the objections of defense counsel."

Defendant contends that the trial court erred in allowing the testimony which addressed the credibility of sexually abused children, as that testimony was not beyond the knowledge of the average lay person and could not aid the jury. The defendant objects to the testimony of Mildred Carter, a mental health therapist for the Center for Children and Youth Services who had seen K.C. weekly since March 30, 1988.

Evid.R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ Carter was clearly qualified as an expert under Evid.R. 702. She has a Master's degree in counseling, has worked with children for thirty-two years,

and has specialized for the past ten years concerning sexually abused children. The test to determine the admissibility of testimony of a witness offered as an expert is whether that witness will assist the trier of fact in understanding the evidence or determining a fact in issue. *State v. Buell* (1986), 22 Ohio St.3d 124, 128–129, 22 OBR 203, 206–208, 489 N.E.2d 795, 800–801. Generalized expert testimony can be helpful to a jury. *Id.* at 130–133, 22 OBR at 208–211, 489 N.E.2d at 801–804.

In this case, Carter testified on direct examination as follows:

"Q. Mrs. Carter, how long have you been working with sexually abused children?

"A. I have been working with children for 32 years. I have worked with children of all—with all types of psychological problems.

"Q. For that entire 32 years?

"A. Yes. My area of specialty with sex abuse has been the last 10 years.

"Q. The last 10 years you worked with children who have been sexually abused?

"A. Yes.

"Q. Of the children that you have worked with, how many have been able to tell you the entire story the first time you have seen them?

"MR. ALLEN: Objection, Your Honor.

"THE COURT: Overruled. He is asking for a percentage.

"A. Approximately—well, I'd say maybe 50 percent, because many times they will recall—

"MR. ALLEN: Objection, Your Honor, beyond the scope of the question that was asked her.

"THE COURT: Sustained. Go ahead and ask a question.

"Q. So, of the kids that you have dealt with, 50 percent of those kids haven't been able to tell you the entire story?

"A. That is correct.

"Q. In your first meeting?

"A. Yes.

"Q. Is there any reason that you know of for that?

"MR. ALLEN: Objection.

"THE COURT: Overruled. Go ahead.

"A. The traumatic experience itself is without—is outside the scope of the child's ability to comprehend exactly what has happened to him or her; and,

consequently, because the mind acts as a buffer for trauma, they will bury things; or it's too painful to bring up or to talk about right then. So, it isn't always uppermost in their minds to talk about.

"MR. ALLEN: Object.

"A. Or do they have the ability to voice it.

"MR. ALLEN: Objection, move to strike that testimony, Your Honor.

"THE COURT: Overruled. Go ahead.

"Q. Does it take a few meetings for you to get to know them before they feel comfortable taking to you about it?

"A. In all cases they have to be able to trust you to be able to reveal their experiences."

Carter did not testify that she believed K.C.'s story. Rather, she merely testified to her opinion that sexually abused children, at least fifty percent of the time, do not relate the entire story at a first meeting. See *State v. Holland* (Oct. 14, 1987), Lorain App. No. 4193, unreported, 1987 WL 18680; *State v. Vorisek* (May 11, 1988), Summit App. No. 13334, unreported, 1988 WL 49422.

On cross-examination of Carter, the following exchange occurred:

"Q. So, when you say it's not unusual for children to not tell the whole truth, you're just talking in general?

"You don't really have any firsthand experience with [K.C.] not telling the truth, do you?

"A. Mr. Allen, children tell the truth the way they experience something. And even as adults, your mind will protect you against trauma. You will not always remember at every given time everything that happened to you in an experience.

"So, think of a little child who is so much younger. How would you expect them to remember every single, solitary detail of an experience at every given time?

"Q. What I'm asking you is: In this case of [K.C.], whom we are talking about here today, you don't know yourself whether she ever told a different version of this incident than she told you or not, do you?

"A. I don't know that. It's quite possible that she could have.

" * * *

"Q. Is it fair to assume that if a child tells a story of sexual abuse; and then later tells a second story in which the abuse is more severe than it was in

the first story, is it fair to assume that the child is always telling the truth the second time?

"A. Please state your question again.

"Q. Is the second story always the true one?

"A. I'm not—I wouldn't be able to tell you that to say, yes, in every case, the second story is always the true one. That would not be a very wise assumption for me to make."

Thus, the issue of K.C.'s veracity was clearly raised by the defendant during cross-examination.

 Determination as to the admissibility of expert testimony is within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. This court cannot conclude that the trial court abused its discretion in admitting the testimony of Carter. Accordingly, the third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY and QUILLIN, JJ., concur.

BAIRD, P.J., dissents.

BAIRD, Presiding Judge, dissenting.

Among other distinguishing features, the facts of *Stincer, supra,* differ from those of this case in that the preliminary examination in *Stincer* both included defense counsel and excluded any questions regarding the substantive testimony of the youthful witnesses. Indeed, the majority opinion in *Stincer* specifically noted that a competency hearing in which a witness is asked to discuss upcoming substantive testimony might bear a substantial relationship to a defendant's opportunity better to defend himself at trial. See *Stincer,* 482 U.S. at 746, 107 S.Ct. at 2667–2668, 96 L.Ed.2d at 648, fn. 20, and accompanying text. Here, of course, such inquiry was made, and it elicited a version of her story that K.C. told at no other time. The defense could not have known of this, and counsel would have no reason to inquire, since such preliminary inquiries normally do not include substantive matters.

In this case, K.C. testified as to what happened and K.C.'s mother testified as to what K.C. told her happened. Moreover, the psychologist testified as to what K.C. told her had happened, and that in fifty percent of the sex abuse cases that she handled, the children did not tell the whole story the first time.

K.C., in the competency hearing, stated that the defendant touched her. This is the only time that K.C. related a version of the incident that included

the defendant's touching her. K.C.'s mother testified that K.C. told her that the defendant did not touch her. K.C. previously had changed her story on whether the defendant had made her touch him. In fact, it was three days after she told a counselor that nothing happened that she first mentioned that she had touched the defendant. K.C. did not tell her mother or the police that she had touched the defendant.

The defendant's conviction was based on the testimony of K.C. and what K.C. told others. If the jury determined that K.C. was not a credible witness, then the state would not have been able to prove its case beyond a reasonable doubt.

Had the defense known that K.C. changed her story again, a few hours before she testified, that information would not only have impacted her credibility but also the credibility of the counselor. Accordingly, I believe that defendant's due process rights were violated because his presence at the competency proceeding would have contributed to the defendant's opportunity to defend himself against the charges.

Since I cannot conclude that the error was harmless beyond a reasonable doubt, I would find that defendant's first and second assignments of error should be sustained, and that the defendant's conviction should be reversed.